IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERNEST KEITH WILKERSON, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 96-4920 (JBS/AMD) |
| v. | : | |
| RASHIDA BROWN, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Mr. Ernest Keith Wilkerson
1307 Scenic Drive
Ewing, NJ 08628
     Plaintiff <u>Pro</u> <u>Se</u>

Vera E. Carpenter, Esq.[1]
LAW OFFICE OF VERA E. CARPENTER
17 Academy Street
Newark, NJ 07102
     Attorney for Defendant Steve Hallett, Esq.

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

     This matter is before the Court upon Defendant Steve

Hallett's motion to dismiss Plaintiff's Complaint pursuant to

Rule 41(b), Fed. R. Civ. P. [Docket Item 135].  Plaintiff Ernest

Keith Wilkerson, proceeding <u>pro</u> <u>se</u>, filed this diversity action

against his ex-girlfriend, Rashida Brown, and numerous

---

     [1]  Since this matter was reopened, Mr. Hallett has filed
numerous submissions upon the Docket, and Vera E. Carpenter,
Esq., who represented Mr. Hallett until the case was
administratively terminated, and who is still listed as Mr.
Hallett's attorney, has filed no submissions.  Ms. Carpenter is
still listed as the attorney of record herein until she or Mr.
Hallett files an appropriate motion to the contrary.

individuals, including Defendant Hallett, whom Plaintiff alleges were instrumental in enabling Ms. Brown to steal money from him. In 1999, after substantial discovery and motion practice, this case was "temporarily stayed and administratively terminated upon the docket of the Court without prejudice to reopening by any party" because, owing to Plaintiff's incarceration, the dispute could not be brought to trial.  (Docket Item 119 at 1.)  Upon his release from prison, Plaintiff moved to reopen this case, and, after the Court granted Plaintiff's motion, Defendant Hallett filed the motion to dismiss presently before the Court.  For the reasons set forth below, Defendant Hallett's motion will be denied.

## II.  BACKGROUND

The facts underlying Plaintiff's claims were reviewed in detail in the Court's June 22, 1998 Opinion [Docket Item 105], and are reviewed herein only to the extent necessary to resolve the motion presently under consideration.  Plaintiff was incarcerated between 1994 and July 26, 2008.  (Docket Item 105 at 3; Wilkerson Cert. ¶ 3.)  While he was incarcerated, Plaintiff asked his then-girlfriend, Ms. Brown, to take possession of his automobile for the duration of his imprisonment.  (Docket Item 105 at 3.)  According to Plaintiff's allegations, Ms. Brown did more than simply take possession of the vehicle; Ms. Brown, Plaintiff alleges, forged alterations to the automobile's

2

certificate of title papers to falsely indicate that Plaintiff had sold the vehicle to Ms. Brown for $1,000.  (Id.)

Plaintiff further alleges that Ms. Brown intended to steal money from his bank account, and in pursuit of this end, approached Defendant Hallett, an attorney, about obtaining a Power of Attorney ("POA") to access Plaintiff's account.  (Id. at 4.)  On September 26, 1994, Defendant Hallett prepared a POA for Brown, witnessed by his secretary, Marion Jefferson.  (Id.) Although Plaintiff's signature appears on the POA, (id.), Plaintiff maintains that Hallett never visited him in prison in order to have Plaintiff execute the POA, and that the signature on the document is a forgery.  (Wilkerson Cert. ¶ 8.)  According to Plaintiff, Ms. Brown used the forged POA to steal money from Plaintiff's bank account.  (Docket Item 105 at 4.)  Defendant Hallett maintains that he did visit Plaintiff in prison in order to obtain Plaintiff's signature on the POA and denies that the signature was forged.

Plaintiff filed the Complaint [Docket Item 1] in this case on October 21, 1996, naming Ms. Brown, Mr. Hallett, and numerous other individuals as Defendants and alleging that Ms. Brown and Mr. Hallett, among others, had a role in the theft of his vehicle and money.  On June 17, 1997, Defendant Hallett filed a motion to dismiss for lack of subject matter jurisdiction [Docket Item 51], which this Court denied in its July 10, 1997 Memorandum Opinion

and Order [Docket Items 57 and 58].  After the parties had
conducted discovery, Defendant Hallett, as well as Defendants
Rodney Thompson, Esq., Randy Lebowitz, and Northeast Auto, each
filed motions for summary judgment, which the Court addressed in
its June 22, 1998 Opinion and Order [Docket Items 105 and 106].
As to Defendant Hallett's motion, the Court found that disputed
questions of fact existed as to whether Defendant Hallett created
a POA with a forged signature, making summary judgment
inappropriate.  (Docket Item 105 at 9.)  As to Defendants
Thompson, Lebowitz, and Northeast Auto, the Court determined that
no dispute existed as to any material fact regarding Plaintiff's
claims against these Defendants, and that these Defendants were
entitled to judgment as a matter of law.  (Id. at 9-12.)

On December 30, 1999, the Court entered an Order for
Administrative Termination, wherein it observed that "the case is
essentially ready for trial but . . . it is a private tort action
unrelated to conditions of confinement that cannot be prosecuted
at trial by plaintiff at this time due to plaintiff's
incarceration."  (Docket Item 119 at 1.)  The Court accordingly
concluded that "the case should therefore be temporarily stayed
and administratively terminated upon the docket of the Court . .
. . without prejudice to the right of any party to reopen for
further proceedings consistent with law, including upon
plaintiff's release from incarceration[.]"  (Id. at 1-2)

4

(emphasis added).

Plaintiff was released from prison on July 26, 2008.
(Wilkerson Cert. ¶ 3.)  Approximately two months after his
release, Plaintiff filed a motion seeking to reopen this case
[Docket Item 120] in order to pursue his claim against Defendant
Hallett exclusively.  Defendant Hallett opposed Plaintiff's
motion, stating in a November 5, 2008 letter [Docket Item 123]
that he believed that Plaintiff's claims against him had been
dismissed with prejudice.  Hallett also contested the merits of
Plaintiff's claims, explaining:

> Yes, I was his attorney prior to his request that I
> execute the Power of Attorney (in question) to his
> girlfriend (one of the original defendants in his case).
> I did not ask him why he wanted a Full Power of Attorney
> executed.  I had my suspicions that he was attempting to
> give his girlfriend the right to Full Power of Attorney
> to:
>
>> 1.   He wanted her to place his assets in her name
>>      to hide them from the Feds who arrested him.
>> 2.   To place his automobile in her name to store
>>      it or sell it.
>> 3.   She was the only one he trusted to handle his
>>      affairs.
>
> Power of Attorney was explained to him in detail; both
> Limited and Full Power of Attorney.

(Docket Item 123 at 2.)

In its November 7, 2008 Order, the Court granted Plaintiff's
motion to reopen this Docket.  The Court explained:

> Plaintiff asserts that he was incarcerated in federal
> prison until his release on July 26, 2008.  He filed this
> motion approximately two months after his release, which
> the Court finds to have been reasonably prompt.  The

reopening is opposed by Defendant Steve Hallett, Esquire, who indicates that he was unaware that the case had not been dismissed but merely administratively terminated without prejudice to reopen when Mr. Wilkerson was freed from imprisonment.  At the time of the entry of the administrative termination, Mr. Hallett was represented by Vera E. Carpenter, Esquire, to whom the termination notice would have been sent.  While it has been almost nine years since the case was administratively terminated, it was within the contemplation of the Court and, presumably, all parties that the case would be frozen in place during Mr. Wilkerson's incarceration. The Court is not able to determine that Mr. Hallett would be so prejudiced by the passage of time that he is unable to fairly be called upon to complete the defense of this case.  Mr. Hallett's opposition letter, dated October 28, 2008, objects to being named as the sole targeted defendant in the reopened action, and it reveals that Mr. Hallett still appears to have a rather fresh memory of the events giving rise to this case, as recited in his letter to the Court . . . .

Because an Order for Administrative Termination is a docket control device, and not an Order for Dismissal, the case may be freely restored to the docket upon a timely application to do so.  The Order of December 30, 1999 anticipated that a period of years might well pass before the docket could be reopened . . . .

Under all these circumstances, the Court is constrained to grant plaintiff's motion to reopen the case.  The case shall go forward only against defendant Hallett and not as to any other remaining defendant.  The Court makes no determinations at this time regarding issues such as laches or spoliation of evidence.

(Docket Item 124 at 2-4.)  Three months after this matter was

reopened, Defendant Hallett filed the motion to dismiss presently

under consideration [Docket Item 135], to the merits of which the

Court now turns.

## III. DISCUSSION

Defendant Hallett has moved to dismiss Plaintiff's claims against him, arguing that dismissal is appropriate pursuant to Rule 41(b), Fed. R. Civ. P. (dismissal for failure to prosecute), the equitable doctrine of laches, and on account of spoliation of evidence.  The Court addresses these arguments in turn below.

### A.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41(b)

#### 1.   Standard of Review

"Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute." Briscoe v. Klaus, 538 F.3d 252, 258 (3d Cir. 2008); see Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").  When considering a motion to dismiss pursuant to Rule 41(b), the Court weighs the six factors identified by the Court of Appeals in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984). See Briscoe, 538 F.3d at 258 (applying Poulis factors to Rule 41(b) motion).  Those factors are:

> (1) the extent of the party's personal responsibility;
> (2) the prejudice to the adversary caused by the failure
> to meet scheduling orders and respond to discovery; (3)
> a history of dilatoriness; (4) whether the conduct of the
> party or the attorney was willful or in bad faith; (5)
> the effectiveness of sanctions other than dismissal,
> which entails an analysis of alternative sanctions; and
> (6) the meritoriousness of the claim or defense.

7

Poulis, 747 F.2d at 868 (emphasis omitted).

"While the appropriateness of dismissal is not contingent upon the satisfaction of all six factors in a given case, 'the resolution of any doubts [must be] in favor of adjudication on the merits.'" Bowers v. National Collegiate Athletic Ass'n, 564 F. Supp. 2d 322, 334 (D.N.J. 2008) (quoting United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 162 (3d Cir. 2003)).  Moreover, "[i]n the jurisprudence of dismissal, willfulness or bad faith is almost always required in order for dismissal to be within the proper scope of the court's discretion." Id. at 340 (quoting Estate of Spear v. C.I.R., 41 F.3d 103, 111 (3d Cir. 1994)).

      2.  Analysis

Applying these considerations to the facts of this case, the Court will deny Defendant's motion.  First, the Court does not find that Plaintiff bears "personal responsibility" for the delay herein.  Poulis, 747 F.2d at 868 (emphasis omitted).  The facts underlying Plaintiff's claims arose while Plaintiff was incarcerated, and, in order to be able to timely pursue these claims, Plaintiff had no choice but to file his Complaint during the time of his incarceration.  The parties litigated the case extensively through discovery and substantial motion practice, and it was only at the point where "the case [was] essentially ready for trial but . . . [could not] be prosecuted at trial by

8

plaintiff at this time due to plaintiff's incarceration,"
(Docket Item 119 at 1), that the proceedings had to be stayed.
Defendant has identified no litigation conduct on Plaintiff's
part that has contributed to the delay herein.  The Court
accordingly finds that considerations of Plaintiff's "personal
responsibility" do not weigh in favor of dismissal.  Poulis, 747
F.2d at 868 (emphasis omitted).

    The second Poulis factor – "the prejudice to the adversary
caused by the failure to meet scheduling orders and respond to
discovery," id. (emphasis omitted) – likewise does not indicate
that dismissal is appropriate.  Defendant Hallett argues in his
brief that he believed that Plaintiff's case had been dismissed
with prejudice, not stayed and administratively terminated, and
states that he has destroyed or otherwise disposed of the records
that would assist in his defense of the case because "applicable
law does not require an attorney in New Jersey to maintain files
and records for that number of years."  (Def.'s Br. at 5.)  The
1999 Order for administrative termination was clear in its terms:
the case was "temporarily stayed," and it would be
"administratively terminated upon the docket," and it could be
reopened by any party "including upon plaintiff's release from
incarceration."  As the Court's November 7, 2008 Order reopening
this Docket made clear, "[t]he Order of December 30, 1999
anticipated that a period of years might well pass before the

9

docket could be reopened." (Docket Item 124 at 4.) Put simply, the prejudice Defendant complains of as a result of the lost documentary evidence is largely traceable to his, or his attorney's, misreading of the clear terms of the Order for Administrative Termination. Because such prejudice was not "caused by the failure [of Plaintiff] to meet scheduling orders and respond to discovery," Poulis, 747 F.2d at 868 (emphasis omitted), the Court does not find that this second factor weighs in favor of dismissal.[2] See Briscoe, 538 F.3d at 260 (where the alleged prejudice is traceable to the defendant's own conduct, as opposed to the plaintiff's, sanctions are inappropriate).

Third, Defendant has made no suggestion that Plaintiff has "a history of dilatoriness." Poulis, 747 F.2d at 868 (emphasis omitted). "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Briscoe, 538 F.3d at 260 (citation omitted). "Furthermore, [the Court] must evaluate a party's

_____

[2] The Court recognizes that Defendant Hallett also believes he will be prejudiced by the fact that "[p]ossible witnesses for the defense, including but not limited to Rashida Brown, are gone from the area and/or cannot be located." (Hallett Cert. ¶ 14.) Again, there is no suggestion that this prejudice was caused by any misconduct on Plaintiff's part. Moreover, Defendant's submissions are silent as to what efforts, if any, Defendant has taken to locate these purportedly missing witnesses. In the absence of evidence of such efforts, the Court certainly cannot conclude that considerations of prejudice attributable to Plaintiff weigh in favor of dismissal.

problematic acts . . . in light of its behavior over the life of
the case." Id. at 261 (internal quotations and citations
omitted).  As the preceding summary of this action makes clear,
Plaintiff litigated his claims up until the point where it could
proceed no further on account of his incarceration, and
throughout this "life of the case," Defendant made no suggestion
of dilatory conduct on Plaintiff's part.  Id.  There is no
history of dilatoriness in this case.

Nor is there any indication that the period during which
this case was stayed is attributable to willfulness or bad faith
on Plaintiff's part.  See Poulis, 747 F.2d at 868.  As this Court
has explained:

> The Third Circuit has made clear that in the context of
> discovery sanctions, willfulness and bad faith "involve[
> ] intentional or self-serving behavior."  [Adams v.
> Trustees of New Jersey Brewery Employees' Pension Trust
> Fund, 29 F.3d 863, 875 (3d Cir. 1994)].  By contrast, [a
> party's] "negligent behavior" or "failure to move with .
> . . dispatch" – even if "inexcusable" – will not suffice
> to establish willfulness or bad faith.  Id. (citing
> Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 342
> (3d Cir. 1982)).  "In the jurisprudence of dismissal,
> willfulness or bad faith is almost always required in
> order for dismissal to be within the proper scope of the
> court's discretion." Estate of Spear v. C.I.R., 41 F.3d
> 103, 111 (3d Cir. 1994).

Bowers, 564 F. Supp. 2d at 340 (emphasis added).  There is no
suggestion that Plaintiff delayed prosecuting this case through
"intentional or self-serving behavior," id. (citation omitted) –
rather, as the Court explained in its Order for Administrative
Termination, the stay was called for by the circumstance of

11

Plaintiff's incarceration, and was not procured by Plaintiff as a self-serving or tactical maneuver.  In the absence of willful conduct, dismissal is not appropriate.  Id.

In recognition of the fact that "[d]ismissal must be a sanction of last, not first, resort," Poulis calls upon the Court to evaluate the appropriateness of sanctions short of dismissal. Poulis, 747 F.2d at 868-69.  In the context of sanctions, it bears emphasis that "the severity of the prejudice caused by the violation should be proportional to the sanction imposed in an effort to cure that prejudice." Bowers, 564 F. Supp. 2d at 335 (emphasis added).  In this case, as the Court has explained, Defendant has failed to identify prejudice attributable to bad faith litigation misconduct on Plaintiff's part.  That is, although the length of the stay in the proceedings herein was inconvenient for all parties, the Court finds that it was Defendant's misunderstanding of the terms of the stay, and not any delinquency or willful misconduct attributable to Plaintiff, that led Defendant to dispose of documents related to this case and caused the prejudice of which Defendant now complains.[3]  The fifth Poulis factor thus does not weigh in favor of dismissal, or the imposition of any alternative sanction.

---

[3]  The Court further notes, as it did in its Order granting Plaintiff's motion to reopen this Docket, that "Mr. Hallett still appears to have a rather fresh memory of the events giving rise to this case, as recited in his [November 5, 2008] letter to the Court."  (Docket Item 124 at 2.)

The Court must finally consider the meritoriousness of
Plaintiff's claims.  <u>Poulis</u>, 747 F.2d at 868.  "A claim, or
defense, will be deemed meritorious when the allegations of the
pleadings, if established at trial, would support recovery by
plaintiff or would constitute a complete defense."  <u>Id.</u> at
869-70.  As this Court has previously recognized, "in light of
the fact that those of Plaintiff's claims that remain in the case
have survived summary judgment motions in the past, the claims
may be considered sufficiently arguable under <u>Poulis</u> for present
purposes."[4]  <u>Bowers</u>, 564 F. Supp. 2d at 344; <u>see also</u> <u>Poulis</u>, 747
F.2d at 869-70 (standard for "meritoriousness" in the sanctions
context is lower than summary judgment standard).

As the preceding discussion makes clear, each of the <u>Poulis</u>
factors weighs against the dismissal of Plaintiff's claims
against Defendant Hallett.  For the reasons explained above,

---

[4] At the end of his brief, Defendant Hallett states that
"[i]n the alternative to dismissing this action against
Defendant, it is requested by Defendant that summary judgment be
entered in his favor, and against Plaintiff."  (Def.'s Br. at
10.)  To the extent that this can be characterized as a motion
for summary judgment, it will be dismissed.  Pursuant to Local
Civil Rule 56.1(a), "[a] motion for summary judgment
unaccompanied by a statement of material facts not in dispute
shall be dismissed."  L. Civ. R. 56.1(a).  Defendant has not
furnished such a statement in support of his motion, making
dismissal of the motion appropriate.  The Court notes, moreover,
that summary judgment would not be called for, for the same
reasons that it was uncalled for at the time of Defendant's first
motion for summary judgment – namely, because a dispute exists as
to the critical facts of whether Defendant visited Plaintiff in
prison and whether Plaintiff's signature on the POA was forged.

Defendant's Rule 41(b) motion will be denied.

**B.   Remaining Considerations**

The Court will not dwell long on the remaining issues raised in Defendant's motion, which it finds unpersuasive.  First, Defendant suggests that the Court should dismiss Plaintiff's claims against him pursuant to the equitable doctrine of laches. "Laches has been found where an <u>inexcusable and unexplainable delay</u> in enforcing a known right prejudiced the other party because of such delay."  <u>In re Kietur</u>, 332 N.J. Super. 18, 28 (N.J. App. Div. 2000) (emphasis added).  As the New Jersey Supreme Court has held "[l]aches may <u>only</u> be enforced when the delaying party had <u>sufficient opportunity</u> to assert the right in the proper forum and the <u>prejudiced party acted in good faith believing that the right had been abandoned</u>."  <u>Knorr v. Smeal</u>, 178 N.J. 169, 181 (2003) (emphasis added).

The Court does not find that the application of the laches doctrine is called for here.  First, the Court does not agree with Defendant that the delay in the prosecution of this case was "inexcusable and unexplainable."  <u>Kietur</u>, 332 N.J. Super. at 28. To the contrary, the fact of the stay of the proceedings herein is explained by the Court's Order for Administrative Termination, which, as this Court has explained, made clear that "it was within the contemplation of the Court and, presumably, all parties that the case would be frozen in place during Mr.

14

Wilkerson's incarceration." (Docket Item 124 at 2.) Far from being unexplainable, the delay in the proceedings herein was expressly provided for in the Court's Order. (Id.)

Moreover, the Court cannot conclude that "the delaying party had sufficient opportunity to assert the right in the proper forum . . ." Knorr, 178 N.J. at 181. To the contrary, the administrative termination of the proceedings herein was premised upon the very fact that the case could not proceed to trial during Plaintiff's incarceration, (Docket Item 119 at 1), and Plaintiff hardly can be said to have had the opportunity to further litigate his claims in the face of the Court's Order to the contrary.

Moreover, the underlying stay of the case occurred only after there had been ample discovery and motion practice, all while events were fresh, with only trial preparation remaining. There is no reason to believe that relevant evidence could not have been gathered and analyzed during the three years in which this case was open and active before the December 30, 1999 Order.

Finally, the Court does find that Defendant "acted in good faith believing that the right had been abandoned." Knorr, 178 N.J. at 181. In his motion, Defendant states, without elaboration, that he "actually thought the case had been dismissed rather than administratively terminated . . . Defendant's belief was reasonable, and his actions [in disposing

of his files] were justified." (Def.'s Br. at 4.)  The Court
cannot agree with Defendant that his "belief" that the matter had
been dismissed with prejudice was reasonable.  Such a belief
finds no support in the language of the Order for Administrative
Termination, which provides in relevant part that the case would
be "temporarily stayed and administratively terminated upon the
docket of the Court . . . . without prejudice to the right of any
party to reopen for further proceedings consistent with law,
including upon plaintiff's release from incarceration[.]"
(Docket Item 119 at 1-2) (emphasis added).  While Defendant's (or
his attorney's) misconstruction of the Court's Order is
unfortunate, the plain language of the Order makes clear that
such a misconstruction was not reasonable or based upon a "good
faith" understanding of the Order.  Knorr, 178 N.J. at 181.  In
short, the Court concludes that the doctrine of laches is not
applicable to the circumstances presented here.

Finally, Defendant's suggestion that spoliation sanctions
should be imposed against Plaintiff on account of Defendant's
destruction of evidence is utterly untenable.  "Spoliation is the
destruction or significant alteration of evidence, or the failure
to preserve property for another's use as evidence in pending or
reasonably foreseeable litigation." Mosaid Tech. Inc. v. Samsung
Elec. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (emphasis
added); see also Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d

16

76, 79 (3d Cir. 1994) (spoliation sanctions account for "the degree of fault of the party who altered or destroyed the evidence" and "the degree of prejudice suffered by the opposing party").  Plaintiff did not destroy any evidence in this case. Defendant's destruction of his own evidence based upon his misunderstanding of the Order for Administrative Termination, although unfortunate, cannot justify the imposition of spoliation sanctions against Plaintiff.

**IV.  CONCLUSION**

For the reasons set forth above, the Court will deny Defendant's motion to dismiss.  The accompanying Order is entered.


**July 8, 2009**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

17