IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ERNEST KEITH WILKERSON,

              Plaintiff,

    v.

STEVE HALLETT, ESQUIRE,

              Defendant.

HON. JEROME B. SIMANDLE

Civil No. 96-4920 (JBS-AMD)

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

APPEARANCES:

Mr. Ernest Keith Wilkerson
1307 Scenic Drive
Ewing, New Jersey 08628
    Plaintiff Pro Se

Steve Hallett, Esquire
909 West State Street
Trenton, New Jersey  08618
    Defendant Pro Se

**SIMANDLE**, District Judge:

    This civil action came before the Court for trial without a jury on July 19, 2010.[1]  The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(1), Fed. R. Civ. P.

---

[1]The parties waived a jury trial as reflected in the Final Pretrial Order filed June 7, 2010 at ¶ 16(a).

## I.  INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Ernest Keith Wilkerson ["Wilkerson"], filed his Complaint in 1996 while incarcerated serving a federal prison sentence, alleging essentially that defendant Steve Hallett, Esquire, who had represented him in his federal criminal case, together with others, including a member of the Trenton Police Department, Virginia Council, conspired to forge documents which resulted in his being deprived of his property without due process of law, namely, a 1986 Chevrolet Corvette and the proceeds of his personal bank account.  His Complaint was filed under 42 U.S.C. § 1983, and the Court has subject matter jurisdiction under 28 U.S.C. § 1331 & 1343.  His Section 1983 claim was eventually dismissed, and this Court retained supplemental jurisdiction under 28 U.S.C. § 1367(a).

Of the nine original defendants, only one remains, namely Steve Hallett, Esquire, who is alleged to have conspired with Wilkerson's former girlfriend, Rashida Brown, and others including Virginia Council, to convert Wilkerson's property while he was incarcerated.  Wilkerson alleges that attorney Hallett, assisted by Hallett's former secretary Marion Jefferson, endorsed a false Power of Attorney form on or about September 26, 1994, giving Rashida Brown a power of attorney to manage Wilkerson's affairs while he faced a potentially lengthy period of imprisonment on federal cocaine distribution charges.  Wilkerson

2

alleges that he never signed the power of attorney and that
Rashida Brown forged his name and that Marion Jefferson falsely
signed as a witness to that signature, and that Steve Hallett
falsely subscribed the power of attorney, stating that he
witnessed Wilkerson personally come before him and sign the
document.

Wilkerson further alleges that Rashida Brown used the false
power of attorney to store his Corvette in 1994 and to title the
Corvette into her own name.  He alleges that Rashida Brown then
sold the car to her mother, former defendant Virginia Council,
who then sold the car to an auto dealership, former defendant
Northeast Auto Imports, Inc.  Wilkerson alleges that the
dealership remitted a check for the Corvette to Virginia Council
in the sum of $5,000, while the true value of the Corvette
exceeded $30,000.

Wilkerson alleges that Virginia Council received stolen
property (i.e., the Corvette) and that the Trenton Police
Department was covering up the crime of its employee.  (Complaint
¶¶ 9 & 10.)  Wilkerson also alleges that the false power of
attorney was used by Rashida Brown to close Wilkerson's bank
account and withdraw the entire balance of $681.22 on September
29, 1994.  He alleged that Rashida Brown applied the money for
her own purposes. Wilkerson seeks a judgment against Hallett to

compensate him for the value of the Corvette and the bank
account, together with interest.

Through motion practice in the early days of this case, the
claims against defendant Rodney Thompson (an attorney associated
with Mr. Hallett), as well as defendants Joe Duddy and Irvin B.
Pierce (both of Northeast Auto Imports, Inc.) were dismissed.  In
December 1999, this Court entered an Order for administrative
termination in view of Mr. Wilkerson's continuing incarceration
and temporary inability to pursue this case, subject to reopening
the case upon his release from prison.

Mr. Wilkerson was released from prison in 2008 and promptly
moved to reopen the case only against defendant Steve Hallett,
Esquire.  On November 7, 2008, the case was reopened only against
Mr. Hallett and claims against all remaining defendants were
dismissed, including Rashida Brown, Virginia N. Council, and
Marion Jefferson.

Mr. Hallett thereafter filed a motion to dismiss, alleging
that he would be prejudiced by the reopening of the case after
the passage of time because he no longer had his files regarding
his former client, Mr. Wilkerson.  The Court denied the dismissal
motion for the reasons set forth in the Opinion and Order of July
8, 2009 [Docket Items 141 and 142].  The final pretrial order was
prepared through the efforts of U.S. Magistrate Judge Ann Marie

Donio and filed on June 7, 2010.  [Docket Item 150].  The trial
commenced as scheduled on July 19, 2010.

Both Mr. Wilkerson and Mr. Hallett represented themselves
and testified at trial.  Mr. Hallett's previous attorney, Vera
Carpenter, Esquire, withdrew from representation.

## II.  FINDINGS OF FACT

Only two witnesses testified at trial, namely, Mr. Wilkerson
and Mr. Hallett.  Each testified under oath through direct
testimony and was cross-examined by the adverse party.  The Court
also interrogated each witness through clarifying questions and
to better develop the factual record, as permitted by Rule
614(b), Fed. R. Ev.

Among other documents, the sworn statement of Rashida Brown,
given to the Trenton Police Department's Criminal Investigation
Bureau on May 23, 1996, was also admitted into evidence (Ex. P-4)
without objection.[2] Upon Wilkerson's filing of a criminal
complaint, the police were investigating Rashida Brown for theft
and forgery in connection with the disposition of Wilkerson's
Corvette, as well as a Mitsubishi which is not material to the
present case.  In her written, signed statement, Ms. Brown stated
that Wilkerson told her to title the Corvette (and another car, a

---

[2]Plaintiff and Defendant stipulated at the outset of trial
that either party was free to use Rashida Brown's statement (Ex.
P-4) as evidence for any purpose.  Both parties referred to it
during the course of their direct testimony.

Mitsubishi not involved in this litigation) into her name because
he didn't want his wife, from whom he was separated, to get the
cars.  She stated that Wilkerson told her to sell the cars in
September 1994.  She said that there was not a writing or a power
of attorney, but that Wilkerson told her to sell the cars over
the phone.  She admitted signing Wilkerson's name in order to
register the Mitsubishi because he told her to do it.  She also
admitted that she titled the Corvette into her name in the latter
part of September or October 1994, and that she signed it over to
her mother in December of 1995.  She admitted selling the
Corvette in February 1996 to Northeast Auto Imports for $5,000.
The Trenton Police charged her with forgery and theft in
connection with the Corvette, and with forgery in connection with
the Mitsubishi.  (Ex. P-4).[3]

    According to Mr. Wilkerson, Rashida Brown received a
diversionary sentence in municipal court and was ordered to pay
restitution in the amount of $5,000 to Wilkerson at the rate of
$50 per month, of which only one payment was made.  (Mercer
County Probation Department Letter, Feb. 19, 1997).  There is no
evidence that she was actually adjudicated guilty of any charge.
Rashida Brown's whereabouts are unknown, according to Wilkerson

---

    [3]Rashida Brown's statement to police made no mention of her
taking of funds from Wilkerson's credit union account which are
also at issue in this case.

and Hallett, but her sworn statement to the Trenton Police is in evidence.

There are three key facts in dispute:  (1) Is the power of attorney from Ernest Wilkerson to Rashida Brown genuine?  (2) Whether or not the power of attorney is genuine, did Ernest Wilkerson authorize Rashida Brown to title the Corvette in her name and to withdraw funds from his bank account?  (3) Was Mr. Hallett's culpable conduct a proximate cause of the losses Mr. Wilkerson claims in this case?

We will first examine the disputed power of attorney document (Ex. P-1).  The disputed power of attorney purports to be a grant of authority by Wilkerson to Brown appointing her to do each and every act that he could do including buying and selling his goods and other property and transacting "all and every kind of business of what nature or kind, so ever."  It also would specifically permit "business bank withdrawals, personal bank withdrawals."  (Ex. P-1).  In other words, it purported to be a full power of attorney.

The power of attorney also purports to bear the signature of Ernest K. Wilkerson in two places, each dated September 26, 1994.

Each signature on the disputed power of attorney document purports to be witnessed by Marion Jefferson, whose signature appears twice on the witness lines, dated September 26, 1994, immediately beneath Wilkerson's signature lines.  There then

7

appears a certification by Mr. Hallett, certifying that on September 26, 1994, "Ernest K. Wilkerson personally came before me and acknowledged under oath, to my satisfaction, that this person... (a) is named in and personally signed this document; and (b) signed, sealed and delivered this document as his and her act and deed." (Ex. P-1). Curiously, next to Steve Hallett's signature appears the stamped date "SEP 28 1994." (Ex. P-1).

Mr. Hallett claims that he traveled from his Trenton office to Mr. Wilkerson's place of confinement at Mercer County Jail and witnessed Wilkerson signing the document on September 26, 1994. Wilkerson, on the other hand, claims that Mr. Hallett never visited him in that period of time, and that Wilkerson never signed the document. Wilkerson alleges that he was visited by Rashida Brown and also by the attorney associated with Mr. Hallett, namely, Rodney Thompson, Esquire. To assess these competing statements, some additional background about Mr. Wilkerson's criminal case would be in order.

The federal grand jury returned an Indictment against Wilkerson on August 19, 1994. (See United States v. Wilkerson, Crim. No. 94-436 (JEI) (Docket Item 1)). Mr. Wilkerson was arrested by federal authorities at his job in Trenton on August 30, 1994. He was charged with the felony of distribution of CDS, had his initial appearance in Trenton before U.S. Magistrate Judge John J. Hughes (id., Docket Item 4), and he was remanded to

the custody of the U.S. Marshal without bail.  He testified he
was temporarily lodged in the Union County Jail.  He states he
was never lodged in the Mercer County Jail, and there is no other
evidence in this case as to his actual lodging place.  Wilkerson
was temporarily represented at his initial appearance by
Assistant Federal Public Defender Brian Reilly (<u>id.</u>, Docket Item
4), and Judge Hughes granted Wilkerson's application for
appointment of counsel under the Criminal Justice Act, appointing
CJA Panel Attorney Frederick Klepp, Esquire.  (<u>Id.</u>)

The criminal case was assigned to the Honorable Joseph E.
Irenas, U.S. District Judge in Camden, New Jersey.  Wilkerson's
arraignment took place in Camden on September 8, 1994,
represented still by Mr. Klepp.  (<u>Id.</u>, Docket Item 10.)  His
detention was continued, and he was temporarily lodged in the
Camden County Jail, which was used as a holding facility by the
United States Marshal at that time, according to Mr. Wilkerson's
testimony.  Within a very short period, he recollects that the
Marshal took him to FCI Fairton, in Fairton, New Jersey, where he
remained in pretrial detention awaiting trial.  Wilkerson's next
Camden appearance occurred on September 13, 1994, at a hearing
upon Mr. Klepp's appeal from Judge Hughes' detention order, which
Judge Irenas affirmed in an Order filed September 14, 1994 (Cr.
No. 94-436, Docket Item 13.)

Mr. Hallett previously represented Mr. Wilkerson in other criminal cases.  Upon arrest, Wilkerson contacted Hallett and asked him to represent him.  Hallett agreed to do so for a $5,000 fee, with $2,500 payable up front.  Mr. Hallett replaced Mr. Klepp on or about September 13, 1994, which was the date Mr. Klepp submitted his final CJA payment voucher (id., Docket Item 15), although Mr. Hallett didn't file his entry of appearance until October 17, 1994.  (Id., Docket Item 16.)

Wilkerson authorized Rashida Brown to obtain $2,500 cash from Wilkerson's nightstand and to pay it to Hallett.[4]  Wilkerson entrusted his affairs to Ms. Brown, including the task of raising the remainder of Hallett's fee.  Brown paid Hallett the $2,500, and she was to assist in raising the other $2,500 in September, 1994.

Hallett, Brown, and Wilkerson had a three-way telephone conversation, according to Wilkerson's testimony, in which Hallett advised that Wilkerson should have a power of attorney for someone to take care of his financial affairs because he may be confined for a long time.  Wilkerson agreed that he would

_____

[4] It must be noted that Wilkerson failed to disclose the existence of his $2,500 cash or his bank account when he signed his Financial Affidavit in support of his application for appointment of CJA counsel on August 30, 1994.  (U.S. v. Wilkerson, Cr. No. 94-436 (JEI) (Docket Item 7)).  In response to the Financial Affidavit question:  "CASH -- Have you any cash on hand or money in savings or checking account?", Wilkerson checked the box "NO."  (Id.)

consider conferring that power of attorney upon Rashida Brown.
According to his testimony, he wanted to review the power of
attorney document first before he would sign it.

Meanwhile, according to his testimony, Wilkerson admits that
he authorized Rashida Brown to store his Corvette.  He testified
that he asked Ms. Brown to make the storage payments for him and,
if she was unable to do so, to store the car at his grandfather's
house.

Ms. Brown arranged to store the Corvette at Public Storage
for an unknown period of time.[5]

Mr. Hallett's testimony on many of these matters was vague,
and his recollection seemed poor.  He testified that he usually
prepared such power of attorney for his clients, he would have
one of his secretaries type up the document, and that he would
normally take it with him on a jail visit to the client to
witness the client's signature.  He believed that he visited
Wilkerson at the Mercer County Jail and obtained his signature on
the power of attorney there, for that is what Mr. Hallett stated
in 2009 to the Ethics Committee authorities who are examining an
Ethics complaint filed by Wilkerson against Hallett.  Mr. Hallett

---

[5] The parties' stipulation in the Final Pretrial Order, ¶
4C, that "[o]n August 18, 1994, Ms. Brown rented a space at the
storage facility in order to store the allegedly stolen car,"
would appear to contain a typographical error about the date,
contradicting the Public Storage rental agreement.  Wilkerson was
not arrested until August 30, 1994.

stated in Ex. D-5, Letter of Steve Hallett, Esq. to Supreme Court
of New Jersey District Ethics Committee, Sep. 10, 2009, at p. 3:
"I have read the file and do remember visiting the complainant at
Mercer County Correctional Facility.  I visited a couple of
times, and we discussed his Federal Case and his request for his
Power of Attorney to be drawn."

At trial, however, upon learning that Wilkerson was never
confined at Mercer County, Mr. Hallett "recollected" visiting him
instead at the Union County Jail.  According to Wilkerson's
testimony, however, he was not at Union County on September 26;
he was at FCI Fairton.  This would seem to be correct, since
Wilkerson would have been at Union County for only a couple of
days surrounding his arrest and initial appearance in Trenton on
August 30, 1994.  The arraignment, typically within ten days
after the initial appearance, went forward in Camden on September
9, 1994, and he would no longer be lodged at Union County in any
event.  He again appeared in Camden on September 13, 1994, on
appeal of the detention order.  He recalled being lodged at the
Camden County Jail for a short period of time, and then moved by
the U.S. Marshal to FCI Fairton.  Although there is no other
evidence on this point, and the Court's own criminal docket would
not necessarily show where he was lodged, it is by far most
probable that he was at FCI Fairton or Camden County Jail on

September 26, 1994.  He would not have remained at Union County when facing criminal charges in this Court's Camden courthouse.

The more glaring discrepancy is Mr. Hallett's statement to the District Ethics Committee, quoted above, that "I have read the file and do remember visiting the complainant at Mercer County Correctional Facility." (Ex. D-5).  This is at odds with Mr. Hallett's testimony before this Court that his files in this case were destroyed in a fire in the facility in his son's building where he stored them, about five years ago.  If the files were destroyed in or about 2005, one wonders what Mr. Hallett could have been reviewing in September, 2009 when he made the statement to the Ethics Committee.  He produced no such "file" at trial.

The even more damning discrepancy is that Marion Jefferson, who was one of Hallett's secretaries, although signing as a witness twice, never witnessed Wilkerson signing this document. Mr. Hallett has never claimed that he brought Ms. Jefferson to the jail to witness Wilkerson's signature.  Indeed, when asked to explain what her signature as a "witness" means, Hallett has testified that Marion Jefferson only signed as the person who would have given a copy of the executed power of attorney to Rashida Brown.  According to Mr. Hallett, he never met Rashida Brown, and he understands that Rashida Brown came to his office to pick up the power of attorney when he wasn't there and that

13

his secretary, Marion Jefferson, supplied her with the executed document.

Mr. Hallett's story is unbelievable.  The power of attorney form, as noted above, could not be more clear that Marion Jefferson is witnessing Ernest Wilkerson's signature.  She twice signs as a "witness", directly beneath Wilkerson's supposed signature.  She could not have witnessed it because she did not go to the jail, and Wilkerson was never free on bail to go to the Hallett law office.  Trying to explain this, Mr. Hallett told the Ethics Committee that he obtained his secretary's signature on the document after he returned from the jail "even though later I learned her signature was not needed to make the document legal." (Ex. D-5 at p. 3).  Obtaining her signature on this document as a witness, when she had not witnessed the signature of Wilkerson, just makes no sense.  Hallett's statement to the Ethics Committee that he later "learned her signature was not needed to make the document legal" is nonsense that gives no explanation of why he would have had her sign it, as a "Witness", in the first place. Would her signature as a "Witness" subscribing to something she had not, in fact, witnessed make the document more legal?

The questioned signature on the disputed power of attorney also deserves some comment.  Wilkerson testified that the signature "Ernest K. Wilkerson" is not his and that he generally used his middle name, Keith, when signing his name.  He testified

14

that the letters are formed differently than he forms his
letters, and that the distinctive "hooks" on his initials E, K,
and W are quite different.  He made a comparison between the
disputed signature and his known authentic signatures on the
complaint and other documents filed in this Court in 1996.  On
the other hand, Rashida Brown, in her statement to the Trenton
Police detectives (Ex. P-4), admitted forging the signature
"Ernest K. Wilkerson" on the New Jersey title document,
transferring the Corvette from Wilkerson to Rashida Brown (Ex. P-
7).

In other words, it is known that the signature of Ernest K.
Wilkerson on Ex. P-7 is Rashida Brown's forgery of Wilkerson's
name.  That same signature, at least to an untrained eye, bears
more of a resemblance to the disputed "Ernest K. Wilkerson"
signature on Ex. P-1, than the resemblance that the disputed
signature bears to the known Wilkerson signatures on the various
court documents from that period of time years ago.  While this
Court cannot purport to serve the function of an examiner of
questioned documents, a simple lay person's comparison is
consistent with Wilkerson's testimony that he is not the author
of that signature on the contested power of attorney, Ex. P-1.

Further, as noted above, Mr. Hallett's signature on Ex. P-1
is dated September 28, 1994, which is two days after he says he
witnessed Mr. Wilkerson's signature.  This is a date-stamped date

and is apt to be correct.  Mr. Hallett's explanation for this discrepancy does not ring true.  He testified that he was so busy appearing in many courts and had five secretaries to keep him organized, that dates would sometimes get scrambled and incorrect dates would be listed on documents.  Such mix-ups on a document as important as this full power of attorney are difficult to square with the notion that it was properly executed by Wilkerson and witnessed by anyone.  I do not believe Mr. Hallett's story.

On the other hand, on matters concerning his Corvette, Mr. Wilkerson has sometimes also been deceptive.  For example, he falsely titled the Corvette into the name of his stepfather, Leslie Pearson, who lived in New York.  The New York title in Pearson's name in 1992 is in evidence as Ex. P-5, while the New Jersey title in Wilkerson's name is in evidence as Ex. P-6.  Wilkerson explained on cross-examination that he transferred the Corvette from New Jersey to New York for insurance purposes.  He possessed and operated and garaged his Corvette in New Jersey, but he titled it in his New York stepfather's name, in order to get cheaper insurance and lower rates, by his own admission herein.  He acknowledged that the car was supposed to be in New York but that it never was; he testified that the car spent 100% of its time in New Jersey.  He paid for the insurance at the lower New York rates while enjoying full use of his car in New Jersey.  He acknowledged that he never sold the car to his

16

stepfather and that he stored it exclusively in New Jersey.  He
has, in other words, admitted the essential elements of New
Jersey automobile insurance fraud with regard to the Corvette,
occurring just two years before the events in question in this
case.

Regarding Wilkerson's Corvette testimony, it is also not
possible for the Court to believe, as Wilkerson testified, that
he did not know why his Corvette was called a "pace car."  He had
previously testified that this used Corvette was special because
it was a "pace car", produced by Chevrolet in a limited edition
of 500 vehicles.  He claims that this status made the car more
valuable and enhanced his claim in this case.  The term "pace
car" is such a common term, and it is common knowledge, even to
one only marginally acquainted with automobile racing, that the
pace car vehicle leads the racing cars as they approach the
actual start of the race.  Although not a racer itself, the pace
car must be capable of racing-like speeds as it leads the pack of
racing cars into their first lap.  Wilkerson's testimony,
claiming the special status of a "pace car" and later denying
knowledge of what a "pace car" means, lacks credibility.

Mr. Hallett's claim of running a disorganized law office has
great plausibility.  Mr. Hallett testified that he was frequently
appearing in the courts of New Jersey, Pennsylvania, and New York
and that documents would come and go through his office, handled

by his five secretaries, often without his direct personal
involvement, because he was too busy.  In his representation of
Mr. Wilkerson defending the criminal charges, Hallett apparently
permitted Wilkerson to generate motion papers and other legal
documents for his criminal defense which were then retyped by
Hallett's secretary, which Hallett would then sign without paying
attention to the niceties of form and content and submit them to
the court.  As Wilkerson testified herein, when Judge Irenas
received a series of such submissions in the criminal case under
Hallett's signature, he informally reprimanded him and dismissed
him from the case because of his concern that Mr. Hallett was not
providing effective assistance of counsel.[6]  Mr. Hallett was in
fact replaced by appointed counsel in the criminal matter.
According to Wilkerson's testimony, Hallett was also required to
return the $2,500 retainer fee, which Hallett returned to
Wilkerson's prison registry account in 1997 or 1998.

---

[6] This is borne out by the transcript of proceedings before
Judge Irenas on May 26, 1995 in United States v. Wilkerson, Crim.
No. 94-436.  (Docket Item 49 in Crim. No. 94-436.)  Mr. Hallett
had submitted objections to the presentence investigation,
received by the Court on May 16, 1995, signed by Mr. Hallett,
that were, verbatim, identical to Mr. Wilkerson's pro se
objections submitted a month earlier, which had been submitted
unbeknownst to Hallett.  (Tr. 5/26/95 at 4:23 to 7:20.)  Mr.
Hallett admitted to Judge Irenas:  "Your honor, there was
negligence on the matter."  (Id. 6:24-25.)  Judge Irenas
thereafter found that Mr. Hallett was ineffective, and that he
would be removed from the case and the sentencing adjourned
pending appointment of new counsel.  (Id. 12:4 to 13:1.)

At best, Hallett's testimony that he was too busy to be careful and that he just signed what his secretaries put in front of him is further acknowledgment that his conduct was neglectful.

Taking all of the above facts and circumstances into account, the Court finds this power of attorney is not genuine. Wilkerson, Hallett, and Brown had discussed the need for a power of attorney.  Wilkerson was inclined to grant that power to his girlfriend of several years, Rashida Brown, and he told her that she would be handling his affairs because of their close relationship and Wilkerson's plan to keep his property from his estranged wife. Despite this general discussion and intention by Wilkerson to consider signing a power-of-attorney in favor of Rashida Brown, Hallett did not in fact provide a power of attorney form for Wilkerson to sign while in jail.  It appears that Rashida Brown signed Wilkerson's name on the power of attorney and that Marion Jefferson falsely signed as a "witness" twice on the document.  A few days later, Mr. Hallett endorsed the document on September 28, 1994, as if he had himself witnessed its execution by the maker, Mr. Wilkerson.

This contrivance may have been done as a convenience in order to expedite Rashida Brown's ability to raise money for the remaining $2,500 of Hallett's legal fee and to promptly store the Corvette in a safe place.  We do know that the power of attorney was in Rashida Brown's hands by September 29, 1994, when she

withdrew the balance of Wilkerson's bank account, as Wilkerson's
employee credit union check in the sum of $681.22 was made
payable to Rashida Brown.  (Ex. P-2).  No bank would remit the
balance of a depositor's account to a third party unless that
person held the depositor's authority in a power of attorney.
The Court concludes that Brown used the false power-of-attorney
to obtain Wilkerson's funds and close his account at the credit
union.

Although Wilkerson has not always been truthful about his
Corvette, as exemplified by his insurance fraud to which he has
admitted above, the greater problem is the implausibility of
essentially every aspect of Mr. Hallett's explanation for this
multi-flawed document.  That Wilkerson was not at Union County or
Mercer County Jail on September 26, 1994, has been demonstrated.

Mr. Hallett impresses as an attorney who is not overly
concerned with the form of legal documents, as evidenced by
having his secretary sign as witnessing a signature that she did
not witness, and by his discharge from representing Wilkerson in
the criminal case before Judge Irenas for his subscribing shabby
submissions to that court that had been written by his own
client.  Perhaps believing he was doing Wilkerson a favor to
enable Rashida Brown to conduct Wilkerson's affairs, or perhaps
because he wanted to expedite liquidation of Wilkerson's assets
so he could receive the balance of his attorney fee, Mr. Hallett

endorsed the power of attorney when he had not in fact witnessed

Wilkerson's signature, and he implicated his secretary, Marion

Jefferson, in also falsely witnessing Wilkerson's signature.

Thus, the Court finds that the Plaintiff has established, by

clear and convincing evidence, that the disputed power of

attorney form (Ex. P-1) is not genuine.

We next examine whether Ernest Wilkerson nonetheless

permitted Rashida Brown to take control of his assets during the

time of his incarceration.  Wilkerson knew in September, 1994,

that he faced the prospect of a very lengthy term of

imprisonment.  In fact, he was eventually sentenced by Judge

Irenas to 188 months in federal prison in July of 1995.  Shortly

following his arrest, in August, 1994, he entrusted certain of

his affairs to Ms. Brown.  He testified that he was willing to

let Ms. Brown take care of his cars, which is also consistent

with Brown's statements to the Trenton Police, referenced above

(Ex. P-4).  Wilkerson's own statements in exhibits he filed in

this case also confirm that he gave Brown permission to pick up

his paycheck so that she could pay his attorney.  [See Docket

Item 62, filed Sept. 22, 1997.]

Wilkerson demonstrated that trust in several ways.  First,

he entrusted Brown with retrieving $2,500 in cash from his night

stand and paying Hallett with his money, as he has testified.

Second, he entrusted her with the function of storing his

Corvette.  He knew that storage charges would be incurred, and he told her that if she could not afford the storage charges she should store the Corvette at a relative's house.

He apparently never questioned anything that she was doing with his Corvette or his Mitsubishi or his bank account until after he was sentenced in July of 1995, when the couple broke up. He advised her after his sentencing, according to his testimony, that she should "go her own way."  It was then that he began to learn about her disposition of his Corvette and his bank account. It appears that he started investigating what she had done with his cars and bank account after their break-up, and that he tracked down the power-of-attorney, either from the credit union or from the Public Storage facility where the Corvette had been stored under a contract until it was sold.

The Court finds that Mr. Wilkerson intended for Brown to store his Corvette, but not to sell it.  The Court also finds that Mr. Wilkerson did not give Brown permission to take his money from the credit union account.  Brown's sale of the Corvette and keeping the $5,000 proceeds were not permitted or intended by Wilkerson, nor did he permit her to take his bank account funds.

Since Wilkerson permitted Brown to store his Corvette, and since she did store the Corvette for some months (the exact period of storage being uncertain), it follows that the false

22

power of attorney did not cause any loss to Wilkerson from the storage of the Corvette.

The use of the power-or-attorney to close the bank account was not permitted by Wilkerson and caused him to lose the proceeds of the account, $681.22.  Therefore, Plaintiff has not proven that Defendant Hallett's preparation of the false power of attorney caused Plaintiff to suffer financial damage arising from the storage of Plaintiff's Corvette, but he has proven that Hallett's preparation of that document caused Plaintiff's loss of the funds from his bank account.

The remaining factual issue is whether Defendant Hallett's preparation of the false power of attorney was involved in Rashida Brown's re-titling of the Corvette into her name and her mother's name, and then in selling the vehicle.  There is no evidence that Rashida Brown needed to use the power of attorney, nor that she did so, in signing Wilkerson's name to the transfer of title to herself, nor in the titling from herself to her mother, Virginia Council, nor in the sale of the vehicle to Northeast Auto Imports, Inc.  Rashida Brown, as she admitted to the Trenton Police, simply signed Wilkerson's name to the title documents, conveying the vehicle to herself.  She also told the Trenton Police that no power of attorney was used (Ex. P-4), which appears to be true.  She later conveyed it to her mother, and she ultimately arranged its sale for $5,000 to the

23

dealership.  All of this could be done, and was done, without the power of attorney, due to her original forgery on the title transfer document.  If she had used the power of attorney to transfer title to herself, she would not have had to sign Wilkerson's name -- she would simply have presented the power of attorney to the Division of Motor Vehicles and signed for Wilkerson as his attorney-in-fact.  Rashida Brown used the power of attorney to store the Corvette, as Wilkerson requested, but not to sell it thereafter.

Because Plaintiff has not shown that Brown used the power of attorney to convey title or sell the Corvette, Defendant Hallett is not liable in money damages for the sale of Wilkerson's Corvette.

Plaintiff Wilkerson has failed to prove, by a preponderance of the evidence, that a causal relationship existed between Defendant Hallett's preparation of the false power of attorney and Plaintiff's losses involving the Corvette.

Plaintiff has proven, however, that Defendant Hallett's preparation of the false power of attorney form was a foreseeable cause of his loss of the bank account funds in the amount of $681.22 on September 29, 1994.

### III.  CONCLUSIONS OF LAW

This Court has supplemental jurisdiction over Wilkerson's claim against Hallett under 28 U.S.C. § 1367(a).  The Court's original federal question jurisdiction under 28 U.S.C. § 1331 arose from Plaintiff's assertion that his constitutional right of due process had been violated, contrary to 42 U.S.C. § 1983.  Although the Complaint stated no Section 1983 claim against Hallett, the remaining cause of action is so related to the due process claim that even though the federal claim was not meritorious and the Complaint against the municipal police employee Virginia Council had been dismissed, the Court exercised continuing jurisdiction, given the age of the case and efforts of the parties, and did not dismiss pursuant to 28 U.S.C. § 1367(c).

New Jersey law provides the rule of decision.

Plaintiff has the burden of proving his case by a preponderance of the credible evidence.  This Court, after considering all the evidence, must weigh the evidence, determine issues of credibility, and draw reasonable inferences from the facts.

Plaintiff contends that Defendant Hallett participated in the alleged forgery of Plaintiff's signature on a power of attorney form, which thereby allowed a third party, Rashida Brown, to withdraw funds from Plaintiff's bank account and sell Plaintiff's Corvette automobile without permission.  Defendant

asserts that Plaintiff requested that Defendant prepare a power of attorney so that Ms. Brown could handle Plaintiff's affairs and that Plaintiff's signature on the power of attorney was not forged.  (Final Pretrial Order, filed June 7, 2010, at ¶ 1.)

Plaintiff, who is proceeding without a lawyer, does not identify by label a particular cause of action encompassing his claim that he was injured by his lawyer's creation and furnishing of the false power of attorney.  It is apparent that the claims are best characterized as a form of negligence, as Plaintiff does not allege the facts regarding a common plan or purpose necessary to state a claim under civil conspiracy or conversion against Mr. Hallett.  In any event, where the relationship between Plaintiff and Defendant was that of attorney and client, and where Plaintiff has always maintained that Defendant breached his duties toward him in his rendering of legal services, the claim is best characterized as a tort claim for legal malpractice, for which Plaintiff seeks compensatory damages.

As Wilkerson's attorney, Defendant Hallett owed a duty of due care requiring him to comply with the standard of knowledge, skill and care which attorneys of ordinary ability and skill possess and exercise in the representation of a client. Ziegelheim v. Apollo, 128 N.J. 250, 260-61 (1992); Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo, 345 N.J. Super. 1 (App. Div. 2001).

26

In an attorney's relations with a client, an attorney is bound to the highest degree of fidelity and good faith.  Matter of Stein, 97 N.J. 550, 563 (1984); Matter of Nichols, 95 N.J. 126, 131 (1984).

To recover for legal malpractice, a plaintiff must prove (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.  McGrogan v. Till, 167 N.J. 414, 425 (2001); Conklin v. Hannoch Weisman. 145 N.J. 395, 416 (1996).

In addition to proving malpractice, the plaintiff must demonstrate that the attorney's departure from the standard of care proximately caused injury to the client.  In other words, the plaintiff must show by a preponderance of the evidence that the injury claimed was a foreseeable consequence of the breach. Trentacost v. Brussel. 82 N.J. 214, 222-23 (1980); Davin, LLC v. Daham, 329 N.J. Super. 54, 72 (App. Div. 2000); Albee Associates v. Orlof, Lowenbach, Stifelman & Siegel, P.A., 317 N.J. Super. 211, 222 (App. Div. 1999), cert. denied, 161 N.J. 147 (1999).

Normally, expert testimony is required to establish the standard of care in a legal malpractice case because the duties a lawyer owes to his or her client are not known by the average juror.  Stoeckel v. Twp. of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006), cert. denied, 188 N.J. 489 (2006).

Such expert testimony is not needed, however, where the fact finder can determine from common knowledge and experience the standard of care by which to judge the defendant attorney's conduct.  Popwell v. Law Office of Broome and Horn, 363 N.J. Super. 404, 410 (App. Div. 2002)(expert testimony not required where attorney undisputedly failed to file timely claim); Sommers v. McKinney, 287 N.J. Super. 1, 14 (App. Div. 1996)(allegation that attorney charged client for work that he had not performed did not require expert testimony to establish standard of care or causation of harm).

In the present case, Plaintiff has shown that Defendant HALLETT was his attorney and owed him a duty of reasonable care in the preparation of the power of attorney form.  When Hallett undertook the task of preparing a valid power of attorney for Wilkerson, he had the professional duty to do so honestly and in good faith.

Plaintiff has also proved that Defendant Hallett breached that standard of care by subscribing a false power of attorney form that indicated he witnessed Plaintiff's signature when in fact he did not.  It is self-evident, from common knowledge and experience, that an attorney who falsely subscribes a certificate of acknowledgment on a power of attorney form breaches the standard of reasonable conduct owed to the client.

The requirements for executing a valid certificate of acknowledgment are stated in N.J. Stat. Ann. § 46:14-2.1(c). The very first statutory requirement, unsurprisingly, is "that the maker or the witness personally appeared before the officer." Id., § 46:14-2.1(c)(1). The second requirement is "that the officer was satisfied that the person who made the acknowledgment or proof was the maker of or the witness to the instrument." Id., § 46:14-2.1(c)(2). Mr. Hallett, as found above, failed to comply with these two fundamental requirements for a valid certificate of acknowledgment. His failure breached his professional duty to Plaintiff Wilkerson.

With respect to the sale of the Corvette automobile, Plaintiff has not shown, however, that Defendant Hallett's breach of duty was a proximate cause of his harm. The false power of attorney was not used to sell Plaintiff's automobile. That Hallett prepared the power of attorney form did not proximately cause Wilkerson's loss when Rashida Brown, without employing the power of attorney, transferred title to herself, then her mother, then the auto dealer, selling the vehicle and keeping the cash.

The same result applies if Plaintiff's claim is characterizes as an action for breach of fiduciary duty. The law of fiduciary duty as it relates to attorneys is not well-differentiated from legal malpractice under New Jersey law. See Packard-Bamberger & Co., Inc. v. Collier, 771 A.2d 1194, 1203

29

(N.J. 2001).  The Third Circuit has opined, in a recent non-precedential case, that under New Jersey law a cause of action for breach of fiduciary duty requires "the suffering of a loss or damages."  <u>Kanter ex rel. Estate of Schwartz v. Equitable Life Assur. Soc. of U.S.</u>, 363 Fed. App'x 862, 866 (3d Cir. 2010).  The Court of Appeals emphasized the word "harm" in the Restatement's version of a claim for breach of fiduciary duty.  <u>Id.</u> (citing <u>In re Estate of Lash</u>, 776 A.2d 765, 769 (N.J. 2001), which cited Restatement (Second) of Torts § 874 ("One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."))  <u>Kanter</u> would seem to require a showing of actual damages proximately cause by the breach of fiduciary duty, which is absent herein, with respect to the Corvette dealings.  Thus, in the absence of proof of proximate cause of harm, Plaintiff cannot prevail with respect to the Corvette sale on a theory of breach of fiduciary duty by Defendant Hallett.

On the other hand, Plaintiff has proven by a preponderance of the evidence that Defendant Hallett's preparation and furnishing of the false document to Rashida Brown was a foreseeable cause of Wilkerson's loss of his bank account funds. He has proved that Hallett subscribed the untruthful acknowledgment on the power of attorney and, through his legal secretary, Marion Jefferson, furnished the power of attorney to

Rashida Brown bearing the false signature of Wilkerson, giving the legal authority to Brown to withdraw WWilkerson's funds and close his account.  Rashida Brown could not have done so without this power-of-attorney, and she used the document almost immediately after Hallett's secretary furnished it to her.  It was foreseeable that Brown could use this instrument in this fashion, to Wilkerson's detriment, because Hallett failed to perform his duty as an attorney.  This misuse was enabled by Hallett's failure to adhere to the two basic prerequisites for his subscribing the certification, namely that the maker (Wilkerson) personally appear before the officer (Hallett) and that the officer is satisfied that the maker is indeed the true maker, under § 46:14-2.1(c)(1) & (2), <u>supra</u>, and by his furnishing of the document to Brown without Wilkerson's knowledge or consent.  The loss suffered here by Wilkerson was exactly the type of harm that the certification statute was designed to protect Wilkerson against.

An intervening intentional tort or crime does not absolve Defendant of liability in this instance.  As in all cases, the question remains whether the breach caused foreseeable injuries, even if part of what was foreseeable was the harmful acts of the intervening agent who was enabled by the breach.  <u>See</u> <u>Trentacost v. Brussel</u>, 82 N.J. at 222-23, <u>supra</u>; Restatement (Second) of Torts §§ 447-449 (1965).  The Court finds that Rashida Brown was

31

the very person named in the false power of attorney and enabled by Defendant's breach to cause the Plaintiff's loss of his bank account, without his knowledge or consent.

In summary, the court concludes that Defendant Hallett has committed legal malpractice in his subscribing a false acknowledgment on the power-of-attorney form, and that his conduct proximately caused Plaintiff to suffer the loss of $681.22 from his bank account, but that his conduct did not proximately cause his loss of the value of the Corvette automobile.

Plaintiff is entitled to judgment in the amount of $681.22 plus prejudgment interest[7] from the date of filing, October 21, 1996.

<u>CONCLUSION</u>

For the reasons stated in these Findings of Fact and Conclusions of Law, the Court's VERDICT will be entered in favor of Plaintiff Wilkerson and against Defendant Hallett in the amount of $681.22 plus prejudgment interest from October 21, 1996

---

[7] Pursuant to N.J. Ct. R. 4:42-11(b), the Court will add prejudgment interest in tort actions unless otherwise specified by law, with interest running from the latter of the filing date of the case or the date six months after the cause of action arises. Here, the relevant date is the filing date of the Complaint on Oct. 21, 1996. Using the interest rates for each of the years 1996-2010 in the Publisher's Note accompanying N. J. Ct. R. 4:42-11(b) in Presler & Verniero, Current New Jersey Court Rules (2011 ed.), the prejudgment interest calculation through Sept. 29, 2010 yields total interest of $383.07.

in the amount of $383.07, for a total of $1,064.29.  The
accompanying Judgment will be entered.


Date: **September 29, 2010**           **s/ Jerome B. Simandle**
                                        JEROME B. SIMANDLE
                                        U. S. District Judge